*H. M. Lane, for appellees.*

---

## SUSAN A. CRAIG ET AL. *v.* N. F. CROMWELL & WIFE.

**Deeds—When Amounts Only to Bond for Title.**

A deed which is not acknowledged, proven, or witnessed, amounts merely as a bond for title as regards strangers, although valid between the parties.

APPEAL FROM GALLATIN CIRCUIT COURT.

April 15, 1874.

OPINION BY JUDGE PETERS:

This suit was brought by appellees against appellants, to enjoin the execution of a judgment for the recovery of a tract of land in Gallatin county to the extent of a certain boundary constituting a part of said recovery claimed by Mrs. Cromwell, one of the appellees.

Appellees allege in their petition, in substance, that Mrs. Cromwell, a daughter of Jas. Gridley, when she was married to N. F. Cromwell, in 1861, and also for several years prior to her marriage, was in possession of a small tract of land, which she claimed as her own, and over which she exercised dominion and ownership, situated within a claim held by W. H. Gridley and O. D. Gridley, derived from Mrs. Harris. They also allege that Mrs. Cromwell had acquired her title from the said William H. and O. D. Gridley for services which she had rendered them, and for which they verbally agreed to compensate her by conveying said land to her; that after her marriage in 1862 they did convey said land to her for her separate use, and the deed is filed as a part of her petition; that before said deed was executed, Mrs. Cromwell had, under said parol agreement, been in possession of said land, and was then in possession, claiming it against all others, had rented it out, and had been notoriously exercising acts of ownership over it, and that the making of the deed was only perfecting the previous contract under which she entered into possession of the land.

They further allege that they have been informed that the defendants in the court below, some time in the year 1863, instituted a suit in the Gallatin Circuit Court against James Gridley, William H. Gridley, Jas. A. Gridley and O. D. Gridley for the recovery of a tract of land described by certain metes and bounds, "which suit was defended, after a fashion, by said persons who were made defendants thereto to the extent that they claimed an interest in said land;" but that the said Cromwell and wife were not made defendants to said action, and had no notice that their title and interest in said land were involved in that controversy, and therefore took no notice of it and made no defense; that on the final determination of the action, the plaintiffs therein recovered a judgment for the land sued for, including the part in their possession; and that a writ of possession has been awarded the plaintiffs therein, and they

will turn appellees out of possession unless the chancellor will interpose and prevent it. They therefore pray for an injunction to enjoin the plaintiffs therein from proceeding to have said writ executed.

The right to relief is sufficiently controverted in the answer; and on final hearing, the court below adjudged that Mrs. Cromwell was entitled to the land claimed in the petition; that the injunction of herself and husband be made perpetual; and it is that judgment that appellants now seek to reverse.

The deed under which appellees claim the land, purports to have been executed on December 31, 1862, by Oliver G. Gridley and William H. Gridley to Eliza C. Cromwell, "in consideration of the sum of one dollar in hand paid, and in further consideration of twenty-five dollars to be contributed and annually paid by the party of the second part for the support and maintenance of her aged parents during their lives, or the life of the survivor of them."

To this paper there is no subscribing witness, and it is neither proven nor acknowledged by the grantor for record. While it would be sufficient, as between the parties themselves, to pass the legal title, yet, as to strangers, it would be regarded merely as a bond for a title, and so far as they were concerned, it would only vest the obligees with an equity, if it were founded on a valuable consideration.

In the action at law brought by appellants against the defendants thereon, and on which the judgment was rendered for the land in controversy, Jas. A. Gridley, Wm. H. Gridley and O. D. Gridley were defendants; and they all filed an answer, which they signed, and in which, after denying that the plaintiffs, or their ancestor, had title to the land, they add: "These defendants further state that they are the owners, and have the possession of the tract of about 80 acres mentioned, and described in the petition, etc."

That answer was filed on October 2, 1863. On March 23, 1866, the defendants offered to file an amended answer, in which they say they deny that the plaintiffs, or either of them, are the owners, or were in possession of the land described in the petition; but state that said land is the property of these defendants, O. D. Gridley and W. H. Gridley, and that they were in the possession of said land. This amendment was sworn to by W. H. Gridley, as the record shows.

James Gridley, the father of Mrs. Cromwell, proves that in the year 1853, and after Mrs. Harris had received the land from him, his children, O. D. Gridley, Wm. Gridley, Jas. A. Gridley, and Eliza, now Mrs. Cromwell, agreed verbally to purchase said land of Mrs. Harris, that they were all over 21 years of age except J. A. Gridley, who was then about 16 years old; that the agreement was made at his own house, and no one present but the family; that the children were all unmarried, and lived together; that Oliver was the principal paymaster and managed the business; that Mrs. Cromwell made the money to pay for her part of the land before they made her a deed therefor, by doing work for her brothers; and that she had worked for them, and did all their sewing for several years.

This witness stated that after the parol agreement of 1853, a title bond was executed to Mrs. Cromwell by her brothers for the land she claims, in which the boundary was set forth; that the consideration expressed in the bond was "love and affection for their sister, and one dollar"; that he did not know where the bond was; that Mrs. Cromwell may have had it. He stated that she did not agree to contribute $25 per annum for the support of himself and wife; there was no such agreement.

The consideration for the conveyance, as stated in the petition, is for services rendered by Mrs. Cromwell for O. D. and Wm. H. Gridley, for which they promised to compensate her by a conveyance of the land. The consideration, as expressed in the deed itself, is one dollar in hand paid, and the further consideration of $25 to be contributed, and annually paid, by Mrs. Cromwell for the support and maintenance of her aged parents, and the survivor of them; while the father, and draftsman of a writing which the brothers executed to her for a conveyance of the land, proves that the consideration expressed in the bond was natural love and affection, and that there was no agreement, on her part, to contribute to the support of himself and wife. Besides all this, he proves that in 1853, after Mrs. Harris had recovered the land, there was an agreement by all his children, including Mrs. Cromwell, that they would purchase the land from Mrs. Harris, and Mrs. Cromwell paid her part of the purchase money in labor for her brothers.

On June 6, 1853, Mrs. Harris joined Jas. Gridley in a deed for all the land so reserved by her to said O. D. and Wm. H. Gridley,

in consideration, as recited in said deed, of two thousand dollars paid to her by Jas. Gridley, and one dollar paid by Oliver David Gridley and William Henry Gridley. It appears from the recitals of that deed, and to which the grantors of Mrs. Cromwell and her father are parties, that he in fact paid Mrs. Harris for the land, and his sons were made the beneficiaries of his bounty; and the recital in the deed is wholly inconsistent with the theory that the children were the purchasers of the land. If they were, why was not the deed made to the whole of them instead of to two only?

If the consideration recited in the deed to Mrs. Cromwell is the true one, then her father was not present when the sale of the land was made; it was a totally different contract from the one which existed at the time he says his daughter took possession of the land and put tenants on it. It is strange, indeed, that provision should be made by his sons for him and his wife, and he should know nothing of it; nor is it less strange that, in stating the consideration in their petition, appellees should state it entirely different from the one recited in their own deed.

These very unusual and unexplained facts, with others, such as that there should be no subscribing witnesses to the paper, and no one was called to testify when and under what circumstances it was executed, and that neither of the grantors ever acknowledged it, burden the transaction with strong suspicions such as must constrain the chancellor to withhold his aid from the party here invoking it.

But if the question of title alone were to be considered, we incline strongly to the conclusion that the evidence preponderates to establish the line beginning at the buckeye corner on the river and running south 22 east, as the boundary of the Stephens' survey under which appellants claim; and that appellants and those under whom they claim held to that line down to within a short time before this suit was brought, holding under Stephens', whose was the elder patent, and in which the land is included if the line south 22 east be the correct line. The jury who tried the action at law so found, and the judgment rendered on their verdict was approved by the court.

In either aspect of the case the court below erred. Wherefore the judgment is reversed and the cause is remanded with directions to dissolve the injunction and dismiss the petition.

*Landram, for appellant.*

*———, for appellee.*